Hill Design v. Hodgdon, et al.     CV-03-074-M   05/27/03

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Hill Design, Inc.,
     Plaintiff

v.                                      Civil No. 03-74-M
                                        Opinion No. 2003 DNH 086
Vivian Hodgdon, Art in Cooking,
Inc., Patricia Carpenter, and
The Garden Shed, LLC,
     Defendants

**O R D E R**

Plaintiff Hill Design, Inc. ("HDI") has sued defendants in nine counts, seeking both injunctive relief and damages for, _inter alia_, copyright and trademark infringement. In a Report and Recommendation dated April 7, 2003 (document no. 16), the Magistrate Judge granted in part and denied in part plaintiffs' request for injunctive relief. Before the court is plaintiff's objection to the Magistrate Judge's Report and Recommendation (document no. 24). For the reasons given below, the Magistrate Judge's Recommendation is not accepted and the matter is remanded for further consideration.

## Standard of Review

A Magistrate Judge's Report and Recommendation on a motion for injunctive relief is reviewed de novo. 28 U.S.C. § 636(b)(1). This court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate . . . or recommit the matter to the magistrate with instructions." Id.; see also FED. R. CIV. P. 72(b).

## Background

The factual background of this case is set out in detail in the Magistrate Judge's Report and Recommendation. Defendants do not challenge the Magistrate Judge's factfinding. In brief, this dispute grows out of a proposed, but never fully consummated, business deal between HDI and Hodgdon under which HDI was to grant Hodgdon licenses to produce and distribute various cookie molds, shortbread pans, and recipe booklets that were created by HDI and on which HDI holds copyrights and/or trademarks. The parties cooperated in various ways in anticipation of a formal agreement. Hodgdon made some cookie molds in the HDI facility, under the supervision of HDI personnel, and HDI authorized Hodgdon to service some of its customers and sell some of its

2

products.  However, for reasons not pertinent to this order, HDI called off the deal and terminated its relationship with Hodgdon. According to HDI, defendants continued to sell HDI merchandise, without authorization, after April 11, 2002, the date on which HDI severed its relationship with Hodgdon.

Specifically, HDI accuses defendants of: (1) taking and selling HDI products it did not own, without permission; and (2) attaching stickers to the HDI merchandise it sold that covered HDI's copyright notice and misled consumers into believing that defendants had an ongoing business relationship with HDI.  Three categories of merchandise are at issue here: (1) items made and sold by HDI that were collected by Hodgdon; (2) items made by Hodgdon at the HDI facility, under the supervision of HDI personnel, in anticipation a formal licensing agreement between HDI and Hodgdon; and (3) objects purchased from HDI by Helen Ross and stored at HDI's facility.  Defendants have sold merchandise from all three categories.  HDI's suit consists of nine counts, asserting claims of: (1) infringement of its reproduction and distribution rights under the Copyright Act, 17 U.S.C. § 101, et seq., against all defendants; (2) trademark infringement, under

3

15 U.S.C. § 1114(1), against all defendants; (3) trademark infringement, under 15 U.S.C. § 1125(a), against all defendants; (4) cyberpiracy, under 15 U.S.C. § 1125(d)(1)(A), against all defendants; (5) violation of New Hampshire's Consumer Protection Act, N.H. REV. STAT. ANN. § 358-A, against all defendants; (6) breach of contract, against Hodgdon; (7) conversion, against Hodgdon and Carpenter; (8) fraud, against Hodgdon; and (9) breach of fiduciary duty, against Hodgdon.

The Magistrate Judge ruled in favor of HDI, but only to the extent that he recommended that defendants be enjoined from: (1) suggesting or implying that they have an ongoing business relationship with HDI; and (2) obstructing or obscuring the copyright notice stamped into the HDI merchandise they sell. He denied plaintiff's requests for further injunctive relief, based upon his determination that Hill Design had little likelihood of success on any part of its suit other than its trademark infringement claims. In particular, he ruled that under the first-sale doctrine, plaintiff was not likely to succeed on the merits of its claim that defendants had infringed its distribution rights under the Copyright Act.

4

**Discussion**

According to plaintiff, the Magistrate Judge's factual findings compelled a ruling that HDI was likely to prevail on its claims that defendants infringed its distribution rights with respect to items Hill Design had sold to Helen Ross (the "Ross inventory") and items Hodgdon made at the Hill Design facility (the "HDI inventory") prior to April 11, but sold after that date.[1]  Specifically, plaintiff argues that the first-sale doctrine does not apply to either the Ross inventory or the HDI inventory because Hodgdon was never the legal owner of either category of items.  Plaintiff further argues that any authorization Hodgdon may have had to distribute HDI products terminated on April 11.

I.   Relevant Law

Under the Copyright Act, "the owner of copyright under this title has the exclusive rights to do and to authorize . . . distribut[ion] [of] copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by

---

[1] HDI concedes that defendants were entitled to sell any HDI products that they lawfully purchased from HDI or others.

5

rental, lease, or lending." 17 U.S.C. § 106(3). Violation of a copyright owner's exclusive right of distribution constitutes infringement. 17 U.S.C. § 501(a). However, "[n]otwithstanding the provisions of section 106(3), the owner of a particular copy or phonorecord lawfully made under this title, or any person authorized by such owner, is entitled, without the authorization of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord." 17 U.S.C. § 109(a). Section 109(a) is often referred to as the first-sale doctrine.

II.  The Ross Inventory

The Magistrate Judge did not find that defendants "had any right to take and sell the items in the Helen Ross Inventory," but went on to rule that Ross's ownership of those items precluded plaintiff from claiming infringement of its distribution right, under the first-sale doctrine. The first-sale doctrine is inapplicable to the items in the Ross inventory because: (1) the Magistrate Judge did not find that defendants owned those items or that defendants were authorized by their owner to sell them; and (2) an accused infringer of the distribution right may only invoke the first-sale doctrine when

6

he or she "qualif[ies] as the lawful owner of that particular copy."  2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 8.12[B][1][a].  In other words,

> [i]n certain instances, the distribution right may be invoked by the copyright owner with respect to the initial sale or even resales, notwithstanding the fact that ownership of the copies or phonorecords in question may be vested in another.  This would arise where the seller is one who has stolen or otherwise wrongfully obtained the copies or phonorecords from a licensee or other person who owned them.  In such circumstances, the sale would not be by the owner of the copies or phonorecords, and hence, Section 109(a) would not be applicable.

Id. § 8.12[B][6].  Accordingly, the Magistrate Judge's Report and Recommendation is necessarily rejected to the extent it relies on the first-sale doctrine to support a finding that plaintiff is not likely to succeed on the merits of its copyright infringement claim as to the Ross inventory.

III. The HDI Inventory

It is unclear how the first-sale doctrine might apply to the HDI inventory.  That inventory consists of items that Hodgdon made at the HDI facility, under the supervision of HDI personnel.  There is no suggestion that those items were ever sold to

7

Hodgdon.  Because there are any number of ways in which Hodgdon could have made the items in the HDI inventory, without obtaining legal ownership of them, and because the Magistrate Judge made no finding that actual legal ownership of those items had ever vested in any of the defendants, the first-sale doctrine may be inapplicable to the HDI inventory on the record as it stands. Accordingly, the Report and Recommendation is necessarily rejected to the extent it relies on the first-sale doctrine, on this record, to support a finding that plaintiff is not likely to succeed on the merits of its copyright infringement claim relative to the HDI inventory.

## Conclusion

This matter is recommitted to the Magistrate Judge for reconsideration of the applicability of the first-sale doctrine in light of the relevant facts.  To the extent denial of a preliminary injunction hinges on Hodgdon's having been authorized to sell items for HDI, the Magistrate Judge should make findings regarding whether and how such authorization was affected by HDI's April 11, 2002, decision to "pull the rug" on its deal with Hodgdon.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 27, 2003

cc:  David P. Eby, Esq.
     Garfield B. Goodrum, Jr., Esq.
     Vivian Hodgdon
     Edmund J. Waters, Jr., Esq.